GENOVA & MALIN
Attorneys for Shelton Lindsay
Hampton Business Center
1136 Route 9
Wappingers Falls, New York 12590
(845) 298-1600
Thomas Genova, Esq. (TG4706)
Andrea B. Malin, Esq. (AM4424)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
IN RE:

                                                   **CHAPTER 7**
SHELTON LINDSAY,                           **CASE NO. 06-36352 (CGM)**

            Debtor.
--------------------------------------------------------x
LEE KALISH,

            Plaintiff,                  **ADVERSARY PROCEEDING**
                                      **NO.: 07-9025 (CGM)**

    -against-

SHELTON LINDSAY,

            Defendant.
--------------------------------------------------------x

### <u>ANSWER</u>

      Defendant, by his attorneys, GENOVA & MALIN, as and for his Answer to the

Complaint of the Plaintiff, respectfully states:

      1.     Defendant admits the allegations contained in the first paragraph of the

Plaintiff's complaint.

      2.     Defendant admits the allegations contained in the second paragraph of the

Plaintiff's complaint.

      3.     Defendant admits the allegations contained in the third paragraph of the

Plaintiff's complaint.

4. Defendant admits the allegations contained in the fourth paragraph of the Plaintiff's complaint except that the claim of Lee Kalish ("Kalish") is scheduled as disputed by the debtor.

5. Defendant admits the allegations contained in the fifth paragraph of the Plaintiff's complaint except that Kalish submitted his withdrawal notice of his officership and directorship of Rock City Sound, Inc. ("RCS") on February 20, 2004 leaving Shelton Lindsay ("Lindsay") thereafter to operate the company.

6. Defendant admits the allegations contained in the sixth paragraph of the Plaintiff's complaint except that the shares owned by Lindsay are property of the bankruptcy estate pursuant to 11 U.S.C. §541.

7. Defendant admits the allegations contained in the seventh paragraph of the Plaintiff's complaint except that Lindsay resigned as an officer, director and employee of RCS as of June 20, 2005.

8. Defendant admits the allegations contained in the eighth paragraph of the Plaintiff's complaint.

9. Defendant admits the allegations contained in the ninth paragraph of the Plaintiff's complaint.

10. Defendant admits the allegations contained in the tenth paragraph of the Plaintiff's complaint except that subsequent to the withdrawal from RCS by Kalish, Lindsay was its sole officer and director. Kalish sought a restriction on the business operations of the company in the state court litigation and was unsuccessful in obtaining same. The Shareholder Agreement and by-laws of the company granted to the remaining shareholder the authority to conduct business and same was confirmed by the Court in the state court litigation. Furthermore, special meetings

of the shareholders could be and were called by the Board after the withdrawal from the company by Kalish. The company, after his departure, continued to exist and operate, maintained employees and conducted its business . Notwithstanding the Plaintiff's reliance upon the by-laws as set forth in this paragraph, RCS, since its inception, regularly and routinely, borrowed funds from the defendant and family members to maintain operations. Never once did Kalish object to any of these corporate actions.

11.	Defendant admits the allegations contained in the eleventh paragraph of the Plaintiff's complaint except that the act of alleged corporate fraud set forth by Kalish as the basis of his complaint took place subsequent to Kalish's withdrawal from the company. Did he not expect the business to continue and carry on after his leave or was it his intent all along to see the company falter. It appears that Kalish, who acquired his RCS stock directly from Lindsay, <u>for no consideration or investment</u>, was acting in a manner adverse to the interests of RCS while still a shareholder thereof in setting up a competing entity known as Positive Feedback and now comes to this Court seeking an equitable remedy.

12.	Defendant admits the allegations contained in the twelfth paragraph of the Plaintiff's complaint except that said profitability was based upon over thirty (30) years of the passionate and diligent efforts of Lindsay in creating and nurturing an entity which prevailed in the market, established strong client relationships, excelled in technological innovations and selflessly worked to grow a strong and enduring business. Subsequent to a diagnosis of Hepatitis C in 1998 and facing death or transplantation, Lindsay brought Kalish into an ownership position, for no consideration or investment to create a line of succession for the long term stability of the company should the medical condition of Lindsay prove to be incurable.

13.	Defendant admits the allegations contained in the thirteenth paragraph of the

Plaintiff's complaint.

14.     Defendant denies the allegations contained in the fourteenth paragraph of the Plaintiff's complaint.  The purchase price of the stock tendered by RCS, according to its calculations based upon the corporate by-laws and shareholder agreement, was $897,275.00 and not as Kalish claims $1,145,580.00.  This dispute led directly to the impasse between the shareholders, the state court litigation and ultimately the instant bankruptcy filing.

15.     Defendant admits the allegations contained in the fifteenth paragraph of the Plaintiff's complaint.

16.     Defendant denies the allegations contained in the sixteenth paragraph of the Plaintiff's complaint.  The value established for the Kalish shares was fixed based upon the calculations of Robert Cranston, CPA and long time accountant to the corporation, in accordance with the corporate agreements and same was confirmed by counsel to Kalish.

17.     Defendant denies the allegations contained in the seventeenth paragraph of the Plaintiff's complaint.  Robert Cranston, as controller and accountant to the company, issued a letter on August 13, 2004, in a manner in accordance with the Shareholder Agreement, which correctly set forth the value of the Kalish shares.

18.     Defendant admits the allegations contained in the eighteenth paragraph of the Plaintiff's complaint except that said valuation letter, prepared at the insistence of Kalish, was inconsistent with the methodology to be used to establish the share price for a shareholder buyout pursuant to the terms of the RCS shareholder agreement.

19.     Defendant denies the allegations contained in the nineteenth paragraph of the Plaintiff's complaint.  Said valuation was never agreed upon, is inconsistent with the RCS shareholder agreement and Kalish's attorney's computations, and has not been deemed valid in any

court proceeding.

20.    Defendant denies the allegations contained in the twentieth paragraph of the Plaintiff's complaint.  The valuation by the company using the three (3) year averaging method as set forth in the Shareholder Agreement was the correct methodology for calculation of value.

21.    Defendant admits the allegations contained in the twenty-first paragraph of the Plaintiff's complaint.

22.    Defendant admits the allegations contained in the twenty-second paragraph of the Plaintiff's complaint except that Lindsay appeared at the closing and Kalish was tendered the down payment, an amount in excess of $224,000.00, plus an additional promissory note in the amount of $672,956.25 and related documents, all in accordance with the Shareholder Agreement. Kalish, who paid no consideration or investment for his shares, refused to attend and accept said funds or close the transaction.  Specifically, the Shareholder Agreement, at paragraph 12, sets forth as follows:

> **12. Failure to Comply With Six-Month Notice Requirement.**  In the event a Shareholder shall desire to withdraw from his active participation in the Corporation and such Shareholder shall either (i) fail to give the six (6) months' advance written notice required by Section 2(a) of this Agreement, or (ii) withdraw from his participation in the Corporation's business prior to the Withdrawal Date, then upon the occurrence of either of such events (A) the Withdrawing Shareholder shall automatically be deemed to have (x) tendered his resignation from his positions as an officer and a director of the Corporation, and (y) given a proxy to the Remaining Shareholder authorizing the Remaining Shareholder to vote all of the Withdrawing Shareholder's Shares in such manner as the Remaining Shareholder shall in his sole and absolute discretion deem advisable with respect to all matters as to which the Corporation's shareholders are entitled or required to act, and (B) neither the Corporation nor the Remaining Shareholder shall be under any obligation to purchase the Withdrawing Shareholder's Shares as provided in Section 2 hereof (it being understood, however, that the Corporation and the Remaining Shareholder shall retain the right to elect to purchase such shares in accordance with the terms and procedures set forth in Section 2 hereof).  In addition, upon the occurrence of either of the foregoing events, the Withdrawing Shareholder shall not be permitted to dispose of any of his Shares prior to the Withdrawal date, nor may the Withdrawing Shareholder sell his Shares to any third parties subsequent to the

Withdrawal date unless he shall first give the Corporation and the Remaining Shareholders an opportunity to purchase such Shares in compliance with the terms and procedures set forth in Section 5 hereof. Anything to the foregoing notwithstanding, the parties agree that the Withdrawing Shareholder shall have the right to request that the six (6) month notice period be waived or shortened. Should the Remaining Shareholder agree to waive or shorten such notice period, he shall deliver a written consent (the "Consent") to his waiver or shortening of the six (6) month notice period to the Withdrawing Shareholder, which Consent shall recite the date (the "Early Withdrawal Date") on which the Remaining Shareholder agrees to permit the Withdrawing Shareholder to withdraw from the Corporation without triggering the provisions of this Section 12. In the event the Remaining Shareholder agrees to so waive or shorten the six (6) month notice period, the provisions of Section 2 hereof shall remain in full force and effect, except that all references therein to the "Withdrawal Date" shall be deemed to be references to the Early Withdrawal Date as set forth in the Remaining Shareholder's Consent."

23. Defendant admits the allegations contained in the twenty-third paragraph of the Plaintiff's complaint.

24. Defendant admits the allegations contained in the twenty-fourth paragraph of the Plaintiff's complaint.

25. Defendant admits the allegations contained in the twenty-fifth paragraph of the Plaintiff's complaint except that Kalish's concern that Lindsay would "destroy" the company was and is misplaced and ludicrous. It was Lindsay, after all, who started the company, ran it very profitably for years and then, upon being faced with a life threatening illness, tendered shares of stock to Kalish, for no consideration or investment, with the intent to protect the viability of the company going into the future.

26. Defendant admits the allegations contained in the twenty-sixth paragraph of the Plaintiff's complaint. It is quite obvious that Lindsay would have no desire, intent or need to "destroy" the company. However, the actions of Kalish in resigning, refusing to accept the proffered buyout and creating a competing entity while still a shareholder of RCS begs the question as to who

had the desire, intent or need to "destroy" RCS. Kalish knew of the desire of RCS to move forward and the negative impact on the company due to the litigation he commenced.

27.     Defendant admits the allegations contained in the twenty-seventh paragraph of the Plaintiff's complaint.

28.     Defendant admits the allegations contained in the twenty-eighth paragraph of the Plaintiff's complaint except that the State Court order in no way enjoined the company from the acquisition or sale of inventory, machinery, equipment or accounts receivable.

29.     Defendant admits the allegations contained in the twenty-ninth paragraph of the Plaintiff's complaint.

30.     Defendant admits the allegations contained in the thirtieth paragraph of the Plaintiff's complaint.

31.     Defendant admits the allegations contained in the thirty-first paragraph of the Plaintiff's complaint.

32.     Defendant admits the allegations contained in the thirty-second paragraph of the Plaintiff's complaint except that the use of the term defunct is misplaced as the company remained viable even though it ceased to actively be doing business due to the previous resignation of Kalish and failing health of Lindsay.

33.     Defendant denies the allegations contained in the thirty-third paragraph of the Plaintiff's complaint. The books and records of RCS were placed at Iron Mountain, Kingston, New York for safe and secure keeping. The company computer, accounting program, corporate book with minutes were placed with the company's attorney. Said books, records and documents were available to Kalish and his counsel and were always subject to discovery and subpoena.

34.     Defendant denies the allegations contained in the thirty-fourth paragraph of the Plaintiff's complaint.  To the best knowledge, information and belief of Lindsay, all records which were delivered, totaling hundreds of boxes, were available for inspection, copying and discovery.

35.     Defendant admits the allegations contained in the thirty-fifth paragraph of the Plaintiff's complaint except said boxes of document and records were for years 1975 through 1996, prior to Kalish's acquisition of any shares of stock.

36.     Defendant denies the allegations contained in the thirty-sixth paragraph of the Plaintiff's complaint.  Any equipment sales by RCS during said period were undertaken by the company based upon the realities facing it at the time.

37.     Defendant denies the allegations contained in the thirty-seventh paragraph of the Plaintiff's complaint.  In or about July of 2005, RCS sold, to a used equipment broker of impeccable reputation certain of its sound equipment, office equipment and other goods.  Said purchaser, H.T.I.C.S., was introduced to the company by Kalish himself.  The sales price was carefully considered by RCS taking into consideration the age, condition and functionality of the equipment sold.  The company contacted other potential purchasers and was satisfied that the transaction with H.T.I.C.S. was the best available.

38.     Defendant admits the allegations contained in the thirty-eighth paragraph of the Plaintiff's complaint except that this sale consisted mainly of used pieces of office furniture, some of which were over thirty (30) years old.

39.     Defendant denies the allegations contained in the thirty-ninth paragraph of the Plaintiff's complaint.  Subsequent to the asset sale to H.T.I.C.S., the company retained assets

valued in excess of $1,600,000.00.

40.     Defendant lacks sufficient knowledge to form a belief as to the allegations contained in the fortieth paragraph of the Plaintiff's complaint.

41.     Defendant lacks sufficient knowledge to form a belief as to the allegations contained in the forty-first paragraph of the Plaintiff's complaint.

42.     Defendant admits the allegations contained in the forty-second paragraph of the Plaintiff's complaint.

43.     Defendant admits the allegations contained in the forty-third paragraph of the Plaintiff's complaint.

44.     Defendant denies the allegations contained in the forty-fourth paragraph of the Plaintiff's complaint.

45.     Defendant admits the allegations contained in the forty-fifth paragraph of the Plaintiff's complaint.

46.     Defendant lacks sufficient knowledge to form a belief as to the allegations contained in the forty-sixth paragraph of the Plaintiff's complaint.

47.     Defendant lacks sufficient knowledge to form a belief as to the allegations contained in the forty-seventh paragraph of the Plaintiff's complaint.

48.     Defendant denies the allegations contained in the forty-eighth paragraph of the Plaintiff's complaint.  The salary of the defendant varied from time to time, was lower in 2005 than in prior years, and it should be noted that all employees of RCS received a minimum of six (6) weeks termination pay.

49.     Defendant admits the allegations contained in the forty-ninth paragraph of

the Plaintiff's complaint except the treatment provided to the landlord which owned the main operating premises of RCS was less favorable than that received by its two other commercial landlords.

50.     Defendant denies the allegations contained in the fiftieth paragraph of the Plaintiff's complaint.  Upon information and belief, Syntonic Design Group, LLC conducted its business in Westchester County and for a short period of time, not exceeding five (5) months, leased a small portion of the former RCS office space.

51.     Defendant denies the allegations contained in the fifty-first paragraph of the Plaintiff's complaint.  RCS had previously entered into a contract with an entity known as Shrimp & Peas, Ltd. for the payment of approximately $61,000 for each of six (6) years.  Plaintiff Kalish knew of and approved of said agreement and executed same as an officer of RCS.

52.     Defendant lacks sufficient knowledge to form a belief as to the allegations contained in the fifty-second paragraph of the Plaintiff's complaint except that Kalish previously indicated in the state court litigation that he believed that he was fully authorized to compete with RCS upon his withdrawal from the corporation, including the use of the client list, phone book and e-mail addresses of RCS.  Apparently what is good for Kalish is not good for a new entity created by some insightful entrepreneurs upon the downfall of RCS precipitated by the actions of Kalish.

Furthermore, upon information and belief, Lew Mead was the founder and president of ProMix, the largest sound reinforcement company in the United States.  Syntonic based its revenue stream upon relationships forged by Mead and its other shareholders, just as Kalish did with his company, Positive FeedBack.

53.     Defendant admits the allegations contained in the fifty-third paragraph of the Plaintiff's complaint except that Lindsay's work schedule is limited due to medical reasons and are restricted to a consultation basis and he is paid in the same manner as any other Syntonic employee.  The participation by Lindsay in the loan transaction between Syntonic and its lender was specifically limited to his capacity as Trustee of the Linda Lindsay Irrevocable Trust.

54.     Defendant admits the allegations contained in the fifty-fourth paragraph of the Plaintiff's complaint except that the entry of the State Court injunction was unknown at the time of the execution of the December 10, 2004  UCC-1 statements.  In addition, the manner in which this loan transaction was conducted was similar to the procedure used by RCS in prior years.

55.     Defendant denies the allegations contained in the fifty-fifth paragraph of the Plaintiff's complaint.  At the time of the referenced UCC filings, Kalish had withdrawn from the company and neither he nor his counsel inquired as to the post-withdrawal debt of the company while Kalish was off starting his new business to compete with RCS.  In addition, any funds held by the company were deemed by it to be a reserve fund set aside for the Kalish stock buyout.

56.     Defendant denies the allegations contained in the fifty-sixth paragraph of the Plaintiff's complaint.

57.     Defendant denies the allegations contained in the fifty-seventh paragraph of the Plaintiff's complaint.  All payments made to Shrimp & Peas, Ltd. were consistent with the original contract authorized by Kalish regarding the sources to be provided by Shrimp & Peas, Ltd. and were based upon an increased workload due to the departure of Kalish.

58.     Defendant denies the allegations contained in the fifty-eighth paragraph of the Plaintiff's complaint.  Subsequent to a Board of Directors meeting on November 8, 2004,

Lindsay made two loans to the company to cover approximately $91,000 in corporate obligations.

59.    Defendant admits the allegations contained in the fifty-ninth paragraph of the Plaintiff's complaint except that said payment was made subsequent to the realization that Plaintiff Kalish had expended thousands of dollars of company money on numerous personal items.

60.    Defendant denies the allegations contained in the sixtieth paragraph of the Plaintiff's complaint.  Said salary payment was not in violation of RCS by-laws and was in fact significantly less than salaries paid to both Kalish and Lindsay for prior years.

61.    Defendant lacks sufficient knowledge to form a belief as to the allegations contained in the sixty-first paragraph of the Plaintiff's complaint.

62.    Defendant lacks sufficient knowledge to form a belief as to the allegations contained in the sixty-second paragraph of the Plaintiff's complaint.

63.    Defendant denies the allegations contained in the sixty-third paragraph of the Plaintiff's complaint.  Lindsay did not "refuse to disclose", he simply had insufficient knowledge to testify regarding any of said transactions.

64.    Defendant denies the allegations contained in the sixty-fourth paragraph of the Plaintiff's complaint, and in addition set forth that the knowledge or lack thereof of a third party to the proceeding can not be deemed the testimony or action of the defendant.

65.    Defendant denies the allegations contained in the sixty-fifth paragraph of the Plaintiff's complaint.  RCS was and still is a corporation in good standing with the State of New York, has or had remaining assets exceeding $1,600,000, the sale of which was opposed by Kalish in the state court proceeding and furthermore the demise of RCS as a profitable operating entity has created a benefit of Kalish and his new company and a detriment of Lindsay.

66. Defendant denies the allegations contained in the sixty-sixth paragraph of the Plaintiff's complaint. While the plaintiff sees a grand conspiracy in the demise of RCS and the existence of the Syntonic entity, it should always be remembered that it was Kalish's precipitating act in withdrawing from the company and refusing to accept the buyout offered in accordance with the company by-laws which brings the parties to their present juncture. It is not unreasonable to believe that it was Kalish, in refusing the buyout, intentionally set in motion the legal dispute before the Courts which rendered RCS defunct, restricted potential investors from participating in a new era for RCS and thus created an impotent competitor to his new company.

67. Defendant admits the allegations contained in the sixty-seventh paragraph of the Plaintiff's complaint.

68. Defendant admits the allegations contained in the sixty-eighth paragraph of the Plaintiff's complaint.

69. Defendant admits the allegations contained in the sixty-ninth paragraph of the Plaintiff's complaint.

70. Defendant denies the allegations contained in the seventieth paragraph of the Plaintiff's complaint. Kalish was aware that RCS was not operating as early as July, 2004 and into the summer of 2005 as certain of its assets were sold.

71. Defendant denies the allegations contained in the seventy-first paragraph of the Plaintiff's complaint. The books and records of RCS were placed at Iron Mountain, Kingston, New York for safe and secure keeping. The company computer, accounting program, corporate book with minutes were placed with the company's attorney. Said books, records and documents were available to Kalish and his counsel and were always subject to discovery and subpoena.

72. Defendant admits the allegations contained in the seventy-second paragraph of the Plaintiff's complaint except it was Kalish who had withdrawn from the company and it was Kalish who refused to attend the closing and be paid a sum in excess of $897,000 for shares of stock for which he neither paid consideration nor made an investment.

73. Defendant admits the allegations contained in the seventy-third paragraph of the Plaintiff's complaint except it was Kalish who had withdrawn from the company and it was Kalish who refused to attend the closing and be paid a sum in excess of $897,000 for shares of stock for which he neither paid consideration nor made an investment. As such, Kalish <u>was</u> in violation of the Shareholder Agreement, specifically at Paragraph 12 thereof, for his failure to comply with the six month notice requirement set forth therein.

74. Defendant denies the allegations contained in the seventy-fourth paragraph of the Plaintiff's complaint. The State Court injunction relief sought by Kalish was radically reduced by the Court. The company was still an ongoing entity at the time. It appears that Kalish expected that Lindsay would simply fold his tent and walk away from the company he had founded thirty years earlier.

75. Defendant denies the allegations contained in the seventy-fifth paragraph of the Plaintiff's complaint.

76. Defendant admits the allegations contained in the seventy-sixth paragraph of the Plaintiff's complaint.

77. Defendant admits the allegations contained in the seventy-seventh paragraph of the Plaintiff's complaint.

78. Defendant admits the allegations contained in the seventy-eighth paragraph

of the Plaintiff's complaint.

79.     Defendant admits the allegations contained in the seventy-ninth paragraph of the Plaintiff's complaint.

80.     Defendant denies the allegations contained in the eightieth paragraph of the Plaintiff's complaint.

81.     Defendant denies or admits the allegations as previously set forth herein.

82.     Defendant denies the allegations contained in the eighty-second paragraph of the Plaintiff's complaint.

83.     Defendant denies the allegations contained in the eighty-third paragraph of the Plaintiff's complaint.

84.     Defendant admits the allegations contained in the eighty-fourth paragraph of the Plaintiff's complaint.

85.     Defendant denies the allegations contained in the eighty-fifth paragraph of the Plaintiff's complaint.

86.     Defendant denies the allegations contained in the eighty-sixth paragraph of the Plaintiff's complaint.  RCS has or had an obligation to Kalish for a buyout regarding his shares of RCS stock in the amount of $897,000.  The obligation set forth by the State Court Order is based on a contempt finding.

87.     Defendant denies the allegations contained in the eighty-seventh paragraph of the Plaintiff's complaint.

88.     Defendant denies or admits the allegations as previously set forth herein.

89.     Defendant admits the allegations contained in the eighty-ninth paragraph of

the Plaintiff's complaint except that Rock City Sound was a C Corp and not an S Corp.

90. Defendant admits in part and denies in part the allegations contained in the ninetieth paragraph of the Plaintiff's complaint. The actions of Lindsay during the wind down of the RCS corporate affairs was undertaken in a fiduciary capacity by Lindsay. All actions of Lindsay were undertaken to protect the company and its shareholders. It must be noted that the proceeds of the H.T.I.C.S. equipment sale were used to satisfy corporate obligations of RCS where Kalish maintained a personal guarantee and the use of the proceeds to satisfy these obligations discharged Kalish's guarantee thereon. In addition, the issue of the remaining unsold equipment, valued in excess of $1,600,000, must not be disregarded in a litigation where Kalish is alleging a breach of a fiduciary duty by Lindsay. In more than twenty-five (25) separate contacts, both telephonic and by correspondence, to Kalish and counsel, RCS sought to sell the remaining inventory for the benefit of the company and its shareholders. Kalish was at best unresponsive and at worst conspiritorial in his lack of initiative to cooperate with any effort to liquidate the remaining equipment.

91. Defendant denies the allegations contained in the ninety-first paragraph of the Plaintiff's complaint.

92. Defendant denies the allegations contained in the ninety-second paragraph of the Plaintiff's complaint.

93. Defendant denies the allegations contained in the ninety-third paragraph of the Plaintiff's complaint. No assets of RCS were transferred directly or indirectly to Lindsay, his spouse or any Trust in which either has control or an interest in. RCS did sell, as set forth at length herein, assets of H.T.I.C.S. and diminimus assets to Syntonic.

94. Defendant denies the allegations contained in the ninety-fourth paragraph

of the Plaintiff's complaint. Kalish violated the letter and spirit of the shareholder agreement by refusing to close on the stock transaction and by unilaterally choosing not to negotiate while RCS withered away, while at the same time creating and nurturing his company, Positive Feedback, as a competitor in the industry. Other than his miscalculations in his proposal for a buyout at the $1.1 million value, not once did Kalish engage in negotiations , in good faith or otherwise, to resolve the matter before turning to a litigation posture which resulted in the demise of RCS.

95.     Defendant denies the allegations contained in the ninety-fifth paragraph of the Plaintiff's complaint.

96.     Defendant denies or admits the allegations as previously set forth herein.

97.     Defendant admits the allegations contained in the ninety-seventh paragraph of the Plaintiff's complaint except that a sale of assets wherein the proceeds are used to satisfy corporate debt and eliminate the personal guarantee of corporate shareholders is not exercising "dominion and control" over Kalish shares. Said sale effectuated a substantial financial benefit to Kalish in the elimination of his personal guarantee to Rhinebeck Savings Bank.

98.     Defendant denies the allegations contained in the ninety-eighth paragraph of the Plaintiff's complaint.

99.     Defendant denies the allegations contained in the ninety-ninth paragraph of the Plaintiff's complaint.

100.     Defendant denies the allegations contained in the one hundredth paragraph of the Plaintiff's complaint. The actions by Lindsay subsequent to the Kalish withdrawal were without malicious intent and were not a willful, malicious act intending to cause injury to Kalish or his property.

101.     Defendant denies the allegations contained in the one hundred and first paragraph of the Plaintiff's complaint.

102.     Defendant denies the allegations contained in the one hundred and second paragraph of the Plaintiff's complaint.

103.     Defendant denies or admits the allegations as previously set forth herein.

104.     Defendant admits the allegations contained in the one hundred and fourth paragraph of the Plaintiff's complaint.

105.     Defendant admits the allegations contained in the one hundred and fifth paragraph of the Plaintiff's complaint.

106.     Defendant denies the allegations contained in the one hundred and sixth paragraph of the Plaintiff's complaint.  A copy of the check regarding the withdrawal was provided to Kalish as part of Rule 2004 document production.

107.     Defendant denies knowledge sufficient to form a belief as to the truth or falsity of the allegations in the one hundred and seventh paragraph of the Plaintiff's complaint.

108.     Defendant denies knowledge sufficient to form a belief as to the truth or falsity of the allegations in the one hundred and eighth paragraph of the Plaintiff's complaint.

109.     Defendant denies knowledge sufficient to form a belief as to the truth or falsity of the allegations in the one hundred and ninth paragraph of the Plaintiff's complaint.

110.     Defendant denies knowledge sufficient to form a belief as to the truth or falsity of the allegations in the one hundred and tenth paragraph of the Plaintiff's complaint.

111.     Defendant denies the allegations contained in the one hundred and eleventh paragraph of the Plaintiff's complaint.  Defendant has provided responses to all document requests

of the plaintiff sufficient to satisfy the Rule 2004 Order.

112.     Defendant admits in part and denies in part the allegations contained in the one hundred and twelfth paragraph of the Plaintiff's complaint. Defendant admits that the vehicles were sold but denies that evidence of consideration has not been provided.

113.     Defendant admits the allegations contained in the one hundred and thirteenth paragraph of the Plaintiff's complaint except that all of said transfers were in conformity with estate planning entered into by Lindsay upon the advice of counsel based upon his medical condition and same preceded the litigation with Kalish.

114.     Defendant admits the allegations contained in the one hundred and fourteenth paragraph of the Plaintiff's complaint except that all of said transfers were in conformity with estate planning entered into by Lindsay upon the advice of counsel based upon his medical condition and same preceded the litigation with Kalish.

115.     Defendant admits in part and denies in part the allegations contained in the one hundred and fifteenth paragraph of the Plaintiff's complaint. Defendant admits that the stocks were held in joint tenancy but denies that Lindsay was the sole source of funds to acquire the stock as Linda Lindsay has been a successful entrepreneur on her own for many years.

116.     Defendant denies the allegations contained in the one hundred and sixteenth paragraph of the Plaintiff's complaint.

117.     Defendant denies the allegations contained in the one hundred and seventeenth paragraph of the Plaintiff's complaint.

118.     Defendant denies or admits the allegations as previously set forth herein.

119.     Defendant denies the allegations contained in the one hundred and

nineteenth paragraph of the Plaintiff's complaint.

120.	Defendant denies the allegations contained in the one hundred and twentieth paragraph of the Plaintiff's complaint.

121.	Defendant denies the allegations contained in the one hundred and twenty-first paragraph of the Plaintiff's complaint.  The response of Lindsay to the Rule 2004 document production Order was complete and exemplary.

122.	Defendant denies the allegations contained in the one hundred and twenty-second paragraph of the Plaintiff's complaint.

123.	Defendant denies the allegations contained in the one hundred and twenty-third paragraph of the Plaintiff's complaint.

124.	Defendant denies the allegations contained in the one hundred and twenty-fourth paragraph of the Plaintiff's complaint.

125.	Defendant denies the allegations contained in the one hundred and twenty-fifth paragraph of the Plaintiff's complaint.

126.	Defendant denies or admits the allegations as previously set forth herein.

127.	Defendant denies the allegations contained in the one hundred and twenty-seventh paragraph of the Plaintiff's complaint.

128.	Defendant admits the allegations contained in the one hundred and twenty-eighth paragraph of the Plaintiff's complaint.

129.	Defendant admits the allegations contained in the one hundred and twenty-ninth paragraph of the Plaintiff's complaint.

130.	Defendant denies the allegations contained in the one hundred and thirtieth

paragraph of the Plaintiff's complaint. All relevant financial records were turned over to Plaintiff in accordance with the Rule 2004 Order.

131. Defendant denies the allegations contained in the one hundred and thirty-first paragraph of the Plaintiff's complaint.

132. Defendant admits the allegations contained in the one hundred and thirty-second paragraph of the Plaintiff's complaint except that said transaction was part of an estate planning process advised by counsel and based upon the threatening terminal illness (Hepatitis C) of Lindsay.

133. Defendant denies the allegations contained in the one hundred and thirty-third paragraph of the Plaintiff's complaint.

134. Defendant denies the allegations contained in the one hundred and thirty-fourth paragraph of the Plaintiff's complaint.

135. Defendant denies the allegations contained in the one hundred and thirty-fifth paragraph of the Plaintiff's complaint. The estate planning process by Lindsay was commenced in 2002 and continued into 2003 and 2004 with all financial details regarding Lindsay carefully examined in light of his potential and expected death.

136. Defendant denies the allegations contained in the one hundred and thirty-sixth paragraph of the Plaintiff's complaint. The estate planning process commenced in 2002 and the creation of certain Trusts for the benefit of family members was well based in financial and death anticipation legal practice. Medical conditions which existed and exist including liver rejection, Hepatitis C, a transplanted liver, continued edema, blood pressure difficulties, continued susceptibility to major forms of cancer due to a suppressed immune system, all gave and give rise

to a legal basis for all transfers undertaken by Lindsay in the form of a valid and legal estate plan.

<u>AS AND FOR A FIST AFFIRMATIVE DEFENSE</u>

137.     The complaint of the Plaintiff fails to state any cause of action upon which relief may be granted.

<u>AS AND FOR A SECOND AFFIRMATIVE DEFENSE</u>

138.     The actions of the Plaintiff relating to his withdrawal from RCS evidence a failure to act in an equitable manner such that he may not now approach the Court seeking equitable relief.

**WHEREFORE,** it is respectfully requested that the complaint of the plaintiff be in all respects dismissed, that the defendant be awarded his attorneys' fees, costs and disbursements of this proceeding, and that the defendant be granted such other and further relief as to the Court may seem just and proper.

Dated:  Wappingers Falls, New York
          June 22, 2007

GENOVA & MALIN
Attorneys for the Debtor

By:     /s/ Thomas Genova
        THOMAS GENOVA (TG4706)
        Hampton Business Center
        1136 Route 9
        Wappingers Falls, NY   12590
        (845) 298-1600